IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **TAKESHIA SMITH,** } | |
| **o.b.o. J.M.C., a minor child,** } | |
| } | |
| **Plaintiff,** } | |
| } | |
| v. } | **Civil Action No.: 2:14-CV-00655-RDP** |
| } | |
| **CAROLYN W. COLVIN,** } | |
| **Acting Commissioner of Social Security,** } | |
| } | |
| **Defendant.** } | |

**MEMORANDUM OF DECISION**

Plaintiff Takeshia Smith brings this action on behalf of her daughter, J.M.C., pursuant to Title XVI of Section 1631(c)(3) of the Social Security Act ("Act"), seeking review of the decision by the Commissioner of the Social Security Administration ("Commissioner") denying her claim for Children's Supplemental Security Income ("SSI"). *See also* 42 U.S.C. § 1383(c). Based upon the court's review of the record and the briefs submitted by the parties, the court finds that the decision of the Commissioner is due to be affirmed.

**I.      Proceedings Below**

Plaintiff filed her application for SSI on behalf of J.M.C. on June 27, 2011. (Tr. 113). The Social Security Administration initially denied Plaintiff's application on July 15, 2011. (Tr. 53). Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") on August 17, 2011. (Tr. 61). Plaintiff's request was granted, and a hearing was held on January 19, 2013. (Tr. 37-52). In his decision, dated March 1, 2013, ALJ John M. Dowling determined that J.M.C. had not been disabled within the meaning of § 1614(a)(3)(C) of the Act since June 27, 2011, the date the application was filed. (Tr. 22-33). After the Appeals Council declined to grant review of the

ALJ's decision on February 6, 2013 (Tr. 1.), Plaintiff had exhausted all administrative remedies making this case ripe for review by this court.

**II.     Facts**

J.M.C. was approximately twenty months old at the time of the hearing. (Tr. 44). Plaintiff alleges that J.M.C. has been disabled since her birth on June 3, 2011 due to four different types of Sickle Cell Anemia ("sickle cell"). (Tr. 44, 92). Furthermore, Plaintiff alleges J.M.C potentially suffers from another disability known as hip dysplasia. (Tr. 25, 124). During her alleged period of disability, J.M.C. received treatment primarily from Children's Hospital. (Tr. 45, 180-277). According to medical records obtained from the Jefferson County Department of Health, J.M.C. tested positive for sickle cell on June 13, 2011, during her 10-days-old check-up. (Tr. 156). In that same visit, Dr. Lee A. Beisher also noted the potential for hip dysplasia. (*Id.*). During J.M.C.'s next visit on June 23, 2011, Dr. Beisher listed both conditions as being "well-controlled," noting that J.M.C. was otherwise a relatively healthy newborn. (Tr. 154). Furthermore, Dr. Joseph Khoury indicated in a report dated September 28, 2011, that J.M.C.'s hips had "normalized" and that "there is no need for continued clinical or radiographic followup for [her hip dysplasia]." (Tr. 187).

Plaintiff took J.M.C. to the emergency room for alleged sickle cell related problems eight times over a twenty-month span (from J.M.C.'s birth to the time of the hearing). (Tr. 44). The first such visit occurred on December 23, 2011 when Plaintiff was concerned about J.M.C. running a high fever and wheezing. (Tr. 195). J.M.C.'s sickle cell diagnosis was confirmed the next day, and she was also diagnosed with community acquired pneumonia. (Tr. 200). J.M.C.'s hematocrit level was determined to be 31.3% and her reticulocyte count was 3.5% during the visit. (Tr. 194). J.M.C. was released the next day in stable condition. (Tr. 200).

Less than one week later, Plaintiff brought J.M.C. back to the emergency room, again concerned about her high fever. (Tr. 208). Her hematocrit level was measured to be 29.7% this time, and her reticulocyte count was 5.5%. (Tr. 207, 215). Once her fever broke, she was discharged again in stable condition, and the report further stated there was no more evidence of pneumonia. (Tr. 215, 221).

J.M.C. did not return to the emergency room until March 15, 2012, again with a high fever. (Tr. 231). Her hematocrit level was noted to be 28.7%, and her reticulocyte count was 3.4%. (Tr. 229). She was also diagnosed with adenovirus. (Tr. 230). After a four-day stay, J.M.C. was released in stable condition. (Tr. 247).

Plaintiff and J.M.C. returned to the emergency room at Children's Hospital again on April 29, 2012, this time with complaints of fever and persistent congestion. (Tr. 248). Her hematocrit level was measured at 27.2%, and her reticulocyte count was 2.8%. (Tr. 248-49). After determining that her "lungs are clear" and that there was no "pleural effusion or pulmonary vascular congestion," J.M.C. was released. (Tr. 262).

J.M.C. was taken to the emergency room again on May 27, 2012 due to a high fever. (Tr. 263). Her hematocrit was noted to be 29.9%, and her reticulocyte count was 2.0%. (Tr. 267). J.M.C. was released that same day once her fever broke (Tr. 268.), but she returned to the emergency room again the next day with a continuing fever. (Tr. 270). After receiving an injection of antibiotics, J.M.C. was released. (Tr. 270-73).

On November 7, 2012, J.M.C. returned to the emergency room because Plaintiff feared her daughter had pneumonia again. (Tr. 293). The doctor concluded that J.M.C.'s lungs were clear and that there were no signs of pneumonia. (*Id.*).

3

In her last visit, on November 22, 2012, x-rays revealed J.M.C.'s lungs showed some signs of mild viral or reactive airway disease. (Tr. 296). Her hematocrit levels were measured at 26.8%, and her reticulocyte count was 4.4%. (Tr. 306-07). She was treated and released in stable condition. (Tr. 308). A childhood disability evaluation form completed by Dr. Robert H. Heilpern concluded that J.M.C.'s impairment or combination of impairments is severe, but does not meet, medically equal, or functionally equal any of the Listings. (Tr. 141).

### III. The ALJ's Decision

For a child to be determined to be disabled as defined under the Act, the child must "have a medically determinable physical or mental impairment or combination of impairments that causes marked and severe functional limitations, and that can be expected to cause death or that has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.906. A physical or mental impairment is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

Social Security regulations provide a three-step test for determining whether a child is disabled. 20 C.F.R. § 416.924(a); *see e.g. Wilson v. Apfel*, 179 F.3d 1276, 1277 n.1 (11th Cir. 1999); *Cole v. Barnhart*, 436 F. Supp. 2d 1239, 1241 (N.D. Ala. 2006). First, an ALJ must determine whether the child is engaging in substantial gainful activity. "Substantial gainful activity" is work activity that involves doing significant physical or mental activities for pay or profit. 20 C.F.R. § 416.972. If the child engages in substantial gainful activity, then the child

cannot claim disability regardless of the child's medical condition. 20 C.F.R. § 416.924(b). If the child is found not to be engaging in substantial gainful activity, the analysis proceeds.[1]

In the second step, an ALJ must determine whether the child has a medically determinable impairment or a combination of medical impairments that is "severe" under the Act. *Id.* At this stage of the analysis, "severe," as understood under Social Security regulations, requires that the child have a medically determinable impairment, or an impairment or combination of impairments that is greater than a slight abnormality that causes no more than minimal functional limitations. *Id.* Absent such a "severe" impairment, the child may not claim disability. *Id.*

Third, an ALJ must determine whether the child's impairment meets or medically equals an impairment included in the Listing of Impairments listed in 20 C.F.R. § 404, Subpart P, Appendix 1 (a "Listing"). 20 C.F.R. § 416.924(d). If the child's impairment meets a Listing, the child is declared disabled. *Id.* Alternatively, the child may also be declared disabled if the child's impairment or combination of impairments functionally equals a Listing. *Id.* In determining whether the child's impairment or combination of impairments functionally equals a Listing, the ALJ must consider the child's functional capacity with regard to six domains.[2] 20 C.F.R. § 416.926a. To functionally equal a Listing, the child's impairment or combination of impairments must result in "marked" limitation in at least two of the domains or an "extreme" limitation in at least one domain. 20 C.F.R. § 416.926a(d). A "marked" limitation is one that "interferes seriously with [the child's] ability to independently initiate, sustain, or complete activities." 20

---

[1] Considering J.M.C.'s infant status, she was incapable of engaging in substantial gainful activity at any time relevant to this decision. *See e.g. Shinn ex rel. Shinn v. Comm'r of Soc. Sec.*, 391 F.3d 1276, 1279 (11th Cir. 2004) (concluding "[t]he claimant, age 4, obviously, has never worked.").

[2] A domain is a broad area of functioning. The six domains considered in determining whether a child's impairment functionally equals a Listing are: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(i)-(vi).

C.F.R. § 416.926a(e)(2)(i). It is "more than moderate" but "less than extreme" and is equivalent to the functioning one "would expect to find on standardized testing with scores that are at least two, but less than three, standard deviations below the mean." *Id.* An "extreme" limitation requires a limitation that is "more than marked" and is "the equivalent of the functioning [one] would expect to find on standardized testing with scores that are at least three standard deviations below the mean." *Id.* In assessing whether the child has a "marked" or "extreme" limitation or combination of limitations, an ALJ must consider the functional limitations from all medically determinable impairments, including impairments that are not severe. 20 C.F.R. 416.926a(a). An ALJ must consider the interactive and cumulative effects of the child's impairment or combination of impairments in any affected domain. 20 C.F.R. § 416.926a(c).

In the present case, the ALJ determined that J.M.C. has not engaged in substantial gainful activity and has a severe impairment that satisfies step two of the analysis. (Tr. 25). The ALJ then found that J.M.C. "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App'x 1," stating that:

> Although the claimant has "severe" impairments, the record does not establish that the claimant is subject to an impairment or combination of impairments that meets or medically equals the requirements of any section of the Listing of Impairments… . Further, no medical expert has opined that the claimant's impairments equal any of the listings.

(Tr. 25-6). The ALJ then concluded that J.M.C. "does not have an impairment or combination of impairments that functionally equals the listings." (Tr. 26). In reaching his conclusion, the ALJ found that J.M.C. had no limitations in five of the domains and less than marked limitation in the domain of health and physical well-being. (Tr. 28-33). Therefore, the ALJ concluded that J.M.C. was not disabled as defined by the provisions of the Act. (Tr. 33).

## IV.     Plaintiff's Argument for Reversal

Plaintiff's argument essentially is three-fold. First, Plaintiff contends that the ALJ erred in concluding that J.M.C. did not medically equal one of the Listings. (Pl.'s Mem. 6). More specifically, Plaintiff argues that the ALJ improperly focused his analysis on whether J.M.C. functionally equaled a Listing without adequately considering whether she medically equaled a Listing. (*Id.*). Secondly, Plaintiff contends that the ALJ inappropriately gave Dr. Heilpern's opinion too much weight. (Pl.'s Mem. 8). Lastly, Plaintiff contends that the ALJ failed to develop the record properly because he did not obtain a medical expert or consultative examination to further examine whether J.M.C. medically equaled a Listing. (Pl.'s Mem. 10).

## V.     Standard of Review

Judicial review of disability claims under the Act is limited to whether the Commissioner's decision is supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). "Substantial evidence is less than a preponderance, but rather such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005); *see also Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)). The Commissioner's factual findings are conclusive when supported by substantial evidence. *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). If supported by substantial evidence, the Commissioner's factual findings must be affirmed, even if the record preponderates against the Commissioner's findings. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004); *see also Martin*, 894 F.2d at 1529. Legal standards are reviewed *de novo*. *Moore*, 405 F.3d at 1211.

**VI.     Discussion**

After careful review, the court finds the following arguments made by Plaintiff are without merit and the ALJ's decision is due to be affirmed.

>  **a.     There is Substantial Evidence to Support the ALJ's Decision that J.M.C. did not Medically Equal a Listing.**

Plaintiff argues that the ALJ erred in concluding that J.M.C. did not medically equal any of the Listings. (Pl.'s Mem. 6). More specifically, Plaintiff believes that J.M.C. medically equals the Sickle Cell Disease Listing at 107.05, and perhaps even the Hemolytic Anemia Listing at 107.03.[3] (Pl.'s Mem. 6-7); 20 C.F.R. Pt. 404, Subpt. P, App'x 1. The Listing of Impairments describes conditions that are so severe as to prevent a person from performing any gainful activity. *Wilson*, 284 F.3d at 1224; 20 C.F.R. § 404.1525(a). As the Supreme Court has explained, for a "claimant to show that his impairment matches a Listing, it must meet all of the specified medical criteria." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). "An impairment that manifests only some of the criteria, no matter how severely, does not qualify." *Id.* However, a person may medically equal a Listing provided "the medical findings [are] at least equal in severity and duration to the listed findings." *Wilkinson o/b/o Wilkinson v. Bowen*, 847 F.2d 660, 662 (11th Cir. 1987).

At the time the application was filed, in order for J.M.C. to meet Listing 107.05, she must have been diagnosed with sickle cell and have: (A) recent, recurrent, severe vaso-occlusive crises

---

[3] The relevant requirement of Listing 107.03 requires one to have "persistence of hematocrit of 26 percent or less despite described therapy, and reticulocyte count of 4 percent or greater." 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 107.03 (effective June 7, 2011 to June 12, 2012). Given that J.M.C.'s hematocrit never measured below 26%, and her reticulocyte count exceeded 4% only twice, the ALJ's determination that she did not medically equal this Listing is supported by substantial evidence.

(musculoskeletal, vertebral, abdominal); or (B) a major visceral complication[4] in the 12 months prior to application; or (C) a hyperhemolytic or aplastic crisis within 12 months prior to application; or (D) chronic, severe anemia with persistence of hematocrit of 26 percent or less; or (E) congestive heart failure, cerebrovascular damage, or emotional disorder as described under the criteria in 104.02, 111.00ff, or 112.00ff. 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 107.05 (effective June 7, 2011 to June 12, 2012). Although Plaintiff concedes that J.M.C. does not equal the Listing, she argues that J.M.C. "comes very close" to meeting the Listing. (Pl.'s Mem. 6). More specifically, Plaintiff claims that J.M.C. has had a major visceral complication that would medically equal the Listing, but that the complication did not occur in the 12 months prior to filing her application. (Pl.'s Mem. 7). Also, Plaintiff claims that while J.M.C.'s hematocrit level has not dipped below 26%, J.M.C. nevertheless has such persistently low hematocrit levels that her condition should medically equal the Listing. (*Id.*).

The Social Security Administration can find medical equivalence if one has an impairment that is described in the Listing of Impairments but: (A) does not exhibit one or more of the findings specified in the particular listing; or (B) exhibits all of the findings but one or more of the findings is not as severe as specified in the particular listing. 20 C.F.R. § 416.926(1)(i)(A)-(B). Plaintiff appears to argue that J.M.C. exhibits all of the requisite findings, but that one or more of the findings are not as severe as required by the Listing. (Pl.'s Mem. 6-7). First, Plaintiff claims that J.M.C.'s December pneumonia diagnosis qualifies as a "major visceral complication" under the Listing. (Pl.'s Mem. 7). Second, Plaintiff claims that J.M.C.'s hematocrit levels between 26.8% and 31.3% are low enough to medically equal the requirement that they persistently fall below 26%. (*Id.*).

---

[4] A "major visceral complication" includes "meningitis, osteomyelitis, *pulmonary infections or infarctions*, cerebrovascular accidents, congestive heart failure…" etc. 20 C.F.R. Pt. 404, Subpt. P, App'x 1, §107.00(A) (emphasis added).

These arguments miss the mark for several reasons. While a pneumonia diagnosis undoubtedly could fit within the "pulmonary infection" example of a "major visceral complication," whether such an infection rises to the level of "major" is a question for the ALJ to decide. *See* SSR 96-6p, 1996 WL 374180 (July 2, 1996) ("The administrative law judge … is responsible for deciding the ultimate legal question whether a listing is met or equaled."). It is not the duty of this court to "decide facts anew, reweigh the evidence, or substitute [its] judgment for that of the Commissioner." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). All that is required is that the ALJ make a determination that is based upon substantial evidence. *See* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982). Although J.M.C. was diagnosed with community acquired pneumonia in late December, when she went back to the emergency room a week later, tests revealed that there were no longer any signs of pneumonia. (Tr. 221). Plaintiff took J.M.C. to the emergency room on November 7, 2012, nearly eleven months after her initial pneumonia diagnosis, because she thought her daughter had pneumonia again; but the doctor concluded that her lungs were clear and there were no signs of pneumonia. (Tr. 293). Two weeks later, x-rays revealed J.M.C.'s lungs showed some signs of mild viral or reactive airway disease. (Tr. 296). However, roughly eleven months passed between J.M.C.'s initial pneumonia diagnosis and the x-rays revealing some signs of mild viral or reactive airway disease. And two weeks before she had those x-rays, doctors determined that J.M.C. was not exhibiting any signs of pneumonia. The medical evidence suggests that J.M.C. was merely experiencing the same sort of minor illnesses as many other children her age. At the very least, there was substantial evidence for the ALJ to conclude that J.M.C. was not suffering from a "major visceral complication."

Furthermore, Plaintiff does not allege that J.M.C. suffered a "major visceral complication" in the 12 months prior to filing her application, which is the relevant time period as outlined in the Listing. Even J.M.C.'s initial pneumonia diagnosis occurred roughly six months after Plaintiff filed her application. Given the medical records, the time frame, and the state reviewing physician's opinion that J.M.C. did not medically equal any of the Listings, there is substantial evidence supporting the ALJ's finding that J.M.C.'s condition did not medically equal a Listing.

Plaintiff's argument that J.M.C. medically equaled the Listing because her hematocrit level was close to being persistently below 26 percent is even further off the mark. The medical records demonstrate that J.M.C. never once had a hematocrit level below 26 percent. (Tr. 180-277). In fact, the lowest it was ever recorded was 26.8%. (Tr. 306-07). Furthermore, Dr. Lee Hilliard noted that J.M.C.'s hematocrit was higher than expected for an infant with sickle cell. (Tr. 194). Given that J.M.C.'s hematocrit level never dipped below 26 percent, and her hematocrit was not persistently low as evidenced by Dr. Hilliard's statement, there is substantial evidence supporting the ALJ's conclusion that J.M.C.'s condition did not medically equal that portion of the Listing.

  **b.  The ALJ Appropriately Gave Dr. Heilpern's Opinion Great Weight.**

The opinions of a state agency reviewing physician can be given weight only insofar as they are supported by evidence in the case record. SSR 96-6p, 1996 WL 374180 (July 2, 1996). State reviewing physicians are highly qualified experts "in the evaluation of the medical issues in disability claims under the Act." *Id.* And although an ALJ is not bound by the opinion of a state medical examiner, the ALJ may not ignore the opinion. *Id.* The ALJ must explain the weight given to such opinions in the decision. *Id.*

Plaintiff cites *Swindle v. Sullivan*, and contends that "[t]he opinion of a non-examining, reviewing physician is entitled to little weight and taken alone, does not constitute substantial evidence to support an administrative decision."[5] 914 F.2d 222, 226 n.3 (11th Cir. 1990). But Plaintiff's reliance on *Swindle* is misplaced for two reasons. First, the issue in *Swindle* involved the slippery slope question of how to weigh medical opinions concerning a claimant's subjective pain. Second, and even more importantly, the *Swindle* court found that the conclusion reached by the medical examiner in that case was actually contrary to evidence in the record. *See Swindle*, 914 F.2d at 225-26. Unfortunately for Plaintiff, the evidence here does not support a similar conclusion. As outlined above, there was substantial evidence supporting the ALJ's finding that J.M.C.'s condition did not medically equal a Listing. Considering that Dr. Heilpern's opinion is wholly consistent with the evidence of record in this case, and further that there is no treating physician's opinion to the contrary, the ALJ properly gave his medical opinion serious weight.

Plaintiff also claims that Dr. Heilpern's opinion should be given little weight because it is not based upon a review of J.M.C.'s entire medical record. While it is true that Dr. Heilpern reviewed J.M.C.'s medical history very soon after the application was filed, it is for the ALJ to decide whether to seek another medical opinion in light of new medical records. *See* SSR 96-6p, 1996 WL 374180 ("[A]n [ALJ] must obtain an updated medical opinion from a medical expert when additional medical evidence is received *that in the opinion of the administrative law judge…* may change the State agency medical consultant[']s] finding that the impairment(s) is not equivalent in severity to any impairment in the Listing of Impairments.")(emphasis added). The ALJ did not find it was necessary to obtain another medical examination in light of J.M.C.'s updated medical history; rather he concluded that the record still supported Dr. Heilpern's opinion. This conclusion is supported by substantial evidence and the ALJ did not misapply any

---

[5] (Pl.'s Mem. 8).

legal standard in (1) relying on Dr. Heilpern's opinion and (2) not requiring an additional medical exam. The ALJ properly weighed Dr. Heilpern's testimony.

### c. The ALJ Adequately Developed the Record.

It is axiomatic that an ALJ has a duty to develop a full and fair record. *Todd v. Heckler*, 736 F.2d 641, 642 (11th Cir. 1984); *Cowart v. Schweiker*, 662 F.2d 731, 735-36 (11th Cir. 1981). And while the ALJ has a basic duty to develop a full and fair record, it is emphatically the claimant's burden to prove her case and produce evidence demonstrating disability. *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) ("It is well established that the ALJ has a basic duty to develop a full and fair record. Nonetheless, the claimant bears the burden of proving [s]he is disabled, and, consequently, [s]he is responsible for producing evidence in support of h[er] claim.").

Furthermore, with regard to the ALJ's failure to seek a consultative examination, the Eleventh Circuit has noted that because an ALJ has a duty to develop a full and fair record "it is reversible error for an ALJ not to order a consultative examination when such an evaluation is necessary for him to make an informed decision." *Holladay v. Bowen*, 848 F.2d 1206, 1209 (11th Cir. 1988); *Reeves v. Heckler*, 734 F.2d 519, 522 n.1 (11th Cir. 1984); *Stutts v. Astrue*, 489 F. Supp. 2d 1291, 1294 (N.D. Ala. 2007). The threshold consideration for the court is this: when does an ALJ need to order a consultative examination to be able to make an informed decision? Though an ALJ "has a duty to develop the record where appropriate [the ALJ] is not required to order a consultative examination as long as the record contains sufficient evidence for the administrative law judge to make an informed decision." *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1269 (11th Cir. 2007) (citing *Doughty v. Apfel*, 245 F.3d 1274, 1281 (11th Cir. 2001)).

Here, as outlined above, there was sufficient evidence for the ALJ to make an informed decision without seeking further consultative examinations. A state agency reviewing physician had already once looked over J.M.C.'s medical history and concluded that she did not meet, medically equal, or functionally equal a Listing. There was nothing in the record expressing anything to the contrary. There is a balance between what the claimant must present to prove her case and what the ALJ must do to develop the case fully. This court is convinced, after reviewing all relevant medical history and the ALJ's decision, that the ALJ adequately developed the record and was able to make an informed decision regarding Plaintiff's claim which is based upon substantial evidence.

**VII.   Conclusion**

The court concludes that the ALJ's determination that J.M.C. is not disabled is supported by substantial evidence and proper legal standards were applied in reaching this determination. The Commissioner's final decision is therefore due to be affirmed, and a separate order in accordance with this memorandum of decision will be entered.

**DONE** and **ORDERED** this July 20, 2015.

_/s/ R. David Proctor_
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE